UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
------------------------------------------------------------------- x
                                              :
DEZMINE WELLS,                                :
                                              :      13-cv-575 (SAS) (SKB)
                    Plaintiff,                :
                                              :
            v.                                :
                                              :
XAVIER UNIVERSITY and FATHER MICHAEL J.       :
GRAHAM,                                       :
                                              :
                    Defendants.               :
                                              :
------------------------------------------------------------------- x

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

---

CARR & SHIVERDECKER
Merlyn D. Shiverdecker
817 Main Street, Suite 200
Cincinnati, Ohio 45202
(513) 651-5652
carrshiverdecker@yahoo.com


PETER R. GINSBERG LAW, LLC
Peter R. Ginsberg, *pro hac vice*
12 E. 49th St., 30th Floor
New York, NY 10017
(646) 374-0030
pginsberg@prglaw.com
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS ..........................................................................................1

ARGUMENT...............................................................................................................10

    I.       WELLS PROPERLY ALLEGES  LIBEL............................................11

          A.    Wells Properly Alleges Libel *Per Se* Arising Out of the Injury to Wells' Personal Reputation (Count III) ...................................... 11

          B.    Wells Properly Alleges Libel *Per Se* Arising Out of the Injury to Wells' Athletic and Professional Reputation (Count IV) .........................12

          C.    Wells Properly Alleges Libel Arising Out of Defendants' Reckless Disregard and Malice (Count V)................................................ 13

          D.    Wells Properly Alleges Libel *Per Quod* (Count VI) ................................ 13

    II.     WELLS PROPERLY ALLEGES TITLE IX VIOLATIONS ..............................14

          A.    Xavier Violated Title IX By Reaching an Erroneous Outcome on the Basis of Sex (Count IX) ...................................................... 15

          B.    Xavier Violated Title IX As A Result of Its Deliberate Indifference to the Evidence (Count X) ............................................... 18

    III.    FATHER GRAHAM IS INDIVIDUALLY LIABLE FOR HIS WRONGFUL ACTS........................................................................19

CONCLUSION.............................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ............................................................................... 11

*Blatnik v. Avery Dennison Corp.*, 148 Ohio App.3d 494 (Ohio Ct.App. 2002) ........................... 12

*Cannon v. University of Chicago,* 441 U.S. 677 (1979) ................................................................ 15

*Cooke v. United Dairy Farmers, Inc.*, 02AP-781, 2003 WL 213896464 (Ohio Ct.App. June 17, 2003) ...................................................................................................................................... 20

*Doe v. University of the South*, 687 F.Supp.2d 744 (E.D. Tenn. 2009) ................................ 15, 18

*Franklin v. Gwinnett County Pub. Sch.,* 503 U.S. 60 (1992) ....................................................... 15

*Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274 (1998) ........................................ 18

*Goudy v. Dayton Newspapers, Inc.*, 237 N.E.2d 909 (Ohio Ct.App. 1967) ................................ 20

*Kingsley v. Brundige*, 513 Fed.Appx. 492 (6th Cir. 2013) .......................................................... 19

*Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013) .............................. 10

*Mallory v. Ohio Univ.,* 76 Fed.App'x 634 (6th Cir. 2003) ............................................... 15, 16, 18

*Northeast Ohio Elite Gymnastics Training Ctr., Inc. v. Osborne*, 916 N.E.2d 484 (Ohio Ct.App. 2009) ...................................................................................................................................... 14

*Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299 (6th Cir. 2000) ................................ 11

*Sarver v. Jackson*, 344 Fed.App'x 526 (11th Cir. 2009) ............................................................ 18

*Schoedler v. Motometer Gauge & Equipment Corp.*, 134 Ohio St. 78 (Ohio 1938) ................... 20

*Shoemaker v. Community Action Org. of Scioto Cty., Inc.,* 06CA3121, 2007 WL 2070365 (Ohio Ct.App. July 16, 2007) ............................................................................................................. 12

*Wagner v. Circle W. Mastiffs*, 732 F.Supp.2d 792 (S.D.Ohio 2010) ................................... 11, 14

*Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir. 1994) ..................................................... 15, 16, 17

## Statutes

Ohio Rev. Code § 2907.02 .......................................................................................................... 12

Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–88 ............................. passim

## Rules

Fed.R.Civ.P. 12(b)(6) ................................................................................................................. 10

## PRELIMINARY STATEMENT

By this action, Plaintiff Dezmine Wells seeks to recover damages for Xavier University ("Xavier")'s and Father Michael J. Graham's failure to follow Xavier's policies and procedures regarding student disciplinary actions and Xavier's and Father Graham's wanton failure to abide by their duties and obligations to respect Wells' rights in a good faith, professional and regular, unbiased manner.

Wells is a former Xavier student-athlete and member of the Xavier men's basketball team during the 2011-2012 Season.

In July 2012, Wells was falsely accused of sexual assault. The Xavier University Conduct Board ("UCB"), charged with adjudicating the allegations against Wells, was grossly untrained and conducted a fundamentally unfair hearing. The damage done to Wells was materially the result of Defendants' irresponsible and reckless rush to judgment driven by a desire to appease government officials who had identified Xavier's previous history of failing to respect and protect students' rights in such matters.

Wells is entitled to actual and punitive damages for Defendants' false, malicious and injurious actions and statements.

## STATEMENT OF FACTS[1]

### *Wells' Background*

Wells grew up in Raleigh, North Carolina with his mother and two sisters. Wells was a decorated high school student-athlete, a member of two state championship basketball teams, and was recruited by universities and colleges throughout the country.

In November 2010, Wells signed a national letter of intent to attend Xavier.

---

[1] The facts stated herein are as alleged in Wells' Amended Complaint. Dkt. #7.

*False Allegations Against Wells*

In the early morning of July 7, 2012, Wells engaged in consensual sex with Kristen Rogers, a Xavier upperclassman. Rogers was Wells' Resident Advisor. The sex occurred after several hours of Wells, Rogers and several of their friends, male and female, socializing in Wells' dormitory room.

During the night, the group played the game "truth or dare." Rogers participated actively and willingly. Many of the dares were sexual in nature and included Rogers giving Wells a lap dance, Rogers lifting up her shirt and exposing her breasts, and Rogers removing her pants. Rogers kissed Wells several times.

Towards the end of the evening, Rogers invited Wells to accompany her back to her dorm room. Upon entering Rogers' room, Rogers and Wells began to kiss and undress, at which point Rogers asked Wells if he had a condom. Wells and Rogers thereafter engaged in consensual sexual intercourse.

Following intercourse, Wells and Rogers returned to Wells' room at approximately 5:15 A.M. to retrieve Rogers' cellular telephone. According to multiple witnesses, Rogers' demeanor was completely normal when she retrieved her telephone.

Hours later, Rogers claimed to Xavier campus police that Wells had sexually assaulted her. A campus police officer instructed Rogers not to use the restroom until she could be examined in order to maintain the accuracy of a medical analysis. Rogers ignored the officer's instructions and used the restroom.

The officer then escorted Rogers to University Hospital at the University of Cincinnati where Rogers was examined for sexual assault. The examination revealed that Rogers had not suffered any trauma from the intercourse with Wells and that there was no evidence of an

assault. The Prosecuting Attorney's Office shortly thereafter confirmed that Rogers had not been assaulted.

On July 12, 2012, Xavier police informed Wells that Rogers had accused him of rape.

*Xavier Student Handbook*

The Xavier Student Handbook ("Handbook") sets forth Xavier's policies and procedures for the adjudication of "cases considered to be of the most serious nature," including allegations of sexual assault and rape. The Dean of Students is authorized to assign cases involving allegations of serious student misconduct to the UCB. The UCB is empowered to hold hearings to adjudicate alleged violations of Xavier's policies.

The UCB is comprised of eight faculty members, four administrators and ten students with sanctioning authority up to and including dismissing students from Xavier. The Handbook mandates the UCB members be trained and experienced in adjudicating such matters and free of prejudice or bias.

The Handbook's policies also mandate that all proceedings must "preserve fundamental fairness." Several procedural requirements are identified. The UCB must use a "preponderance of the evidence" standard and a finding of responsibility is permitted only when the "greater weight of the evidence (more than 50%) supports such a finding." Only witnesses with "knowledge directly related to the pending charges" are permitted to testify. Perhaps most importantly, UCB members are required to receive "training on relevant topics [concerning rape allegations] and [be] equipped to conduct hearings where the complainant may present his or her case and the respondent has an opportunity to defend him or herself."

*Xavier's History of Mishandling Sexual Assault Allegations*

In January 2012, the United States Education Department's Office of Civil Rights

("OCR") opened an investigation into Xavier's handling of two alleged sexual assault cases in 2008 and 2009. OCR's investigation focused on allegations that Xavier allowed a male student accused of sexual assault to remain on campus after an alleged assault, without regard to the rights of two complainants. Then, in February 2012, OCR opened an additional investigation into Xavier's handling of a third alleged sexual assault case.

On August 1, 2012, Xavier announced it had entered into a Resolution Agreement with OCR which included an obligation to establish training and reporting programs designed to protect victims of sexual assault and harassment. Xavier also agreed to pay for counseling for one of the women who claimed she had been assaulted and to ensure her safety on campus.

### The Prosecutor's Office Begins an Investigation

Rogers initially made her accusation to Xavier's campus police. A few days after the alleged assault, Rogers met with Cincinnati police. Rogers shortly thereafter notified Cincinnati police that she did not want to press charges.

Despite Rogers' decision not to proceed with charges against Wells, Hamilton County (Ohio) Prosecutor Joseph T. Deters began an investigation into the alleged sexual assault, as the law required. Deters developed serious concerns about the truthfulness of Rogers' allegations based upon a professional and thorough review of the matter by trained experts.

Deters attempted to communicate these serious concerns directly to Father Graham. Father Graham failed and otherwise refused to return Deters' messages. Deters then communicated with another Xavier official and asked that these serious concerns be communicated to Father Graham. Because of these concerns, Deters requested and advised Xavier not to conduct a hearing on the alleged incident until his Office had completed its investigation. Deters made that request directly to Father Graham.

For fear that it would alienate OCR, and because of Father Graham's own political concerns, Xavier ignored Deters' request and rejected his advice.

***The UCB's Fundamentally Unfair Hearing***

On August 2, 2012, the UCB held a hearing regarding the allegations against Wells.

The Members of the UCB had received woefully inadequate or no training to handle such matters. No member of the UCB was trained to understand or interpret a sexual assault evidence collection kit. There is no indication that the UCB members had received any training to adjudicate allegations of sexual assault.

Wells had a right to an advisor. Xavier made a mockery of that right. Wells' advisor was a faculty member who had never previously advised a student in a proceeding before the UCB and had no training for his advisor role.

Despite mandating a preponderance of the evidence standard in a student disciplinary hearing involving allegations of rape or sexual assault, the UCB was not advised that the complainant had the burden of proving the allegations. To make matters worse, in his opening remarks at the beginning of the hearing, UCB Chairman Brother Darrell Burns ignored the issue of which party had the burden of proof in adjudicating the allegations against Wells.

In fact, the UCB impermissibly placed the burden on Wells to prove his innocence. Despite no evidence of any assault of any kind other than Rogers' testimony, the UCB required Wells to prove that the sexual intercourse was consensual.

No member of the UCB was trained to understand the evidence that would show whether rape or any type of sexual assault had occurred or had not occurred. Furthermore, Xavier Title IX Coordinator Kathy Riga, while acknowledging that there was "no trauma noted" during a medical examination of Rogers after the alleged incident, failed to inform the UCB that the

medical examination evidenced that no sexual assault had occurred.[2]  Riga also inaccurately said there was no laboratory testing results available that analyzed whether any trauma had occurred when, in fact, the laboratory testing affirmatively evidenced that no sexual assault had occurred (a fact Riga knew or should have known).

Despite the UCB's lack of training and qualifications to address the forensic evidence, the UCB failed to call any person with any expertise or experience in interpreting rape kits or handling such matters.  Indeed, the UCB failed to call any witnesses who could have interpreted the results of the medical examination and would have informed the UCB that no rape or sexual assault had occurred.  At the same time, the UCB rejected and otherwise ignored the Prosecuting Attorney's Office's findings that no rape or sexual assault had occurred.

Rogers testified that she spoke with Kara Pierson, a close friend, in the hallway shortly after leaving Wells' room.  Pierson had participated in the "truth or dare game" in Wells' room.  If there were a "shout out" witness, that person was Pierson.  Rogers did not express any concern at all when she spoke with Pierson.  Pierson testified that Rogers was "okay" when they spoke.  Rogers waited ten days to tell Pierson about the alleged assault.  The UCB ignored these facts.

The Handbook prohibits character witnesses, limiting testimony to people with direct knowledge of the matter being adjudicated.  Ignoring the relevant rules, the UCB permitted Rogers to call several witnesses who were unable to provide any admissible and direct evidence but instead who presented prohibited character evidence.  For example, a letter from Fay Coleman, a University representative and Rogers' direct supervisor while Rogers was a Resident Advisor, was read into the record.

The UCB also impermissibly permitted Rogers' friend, Shelby Vaughn, to testify even

[2] "Title IX" refers to Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–88.

though Vaughn was not present during any part of the evening and did not talk to Rogers about the alleged assault until after Rogers had already discussed the evening with another person. Thus, Vaughn was not the "shout out" witness and should have been precluded from testifying.

In contrast to the UCB's treatment of Rogers, the UCB prohibited Wells from introducing character testimony. When a witness for Wells explained, "I just don't see [Wells] being someone that would force himself on somebody else," a UCB member ordered the witness to "stick to the facts." Another UCB member echoed the comments, stating "[w]e can't do character statements." Yet another Wells witness explained that he knew Wells is "not [the] kind of person" who could commit the alleged act. A UCB member scolded the witness, declaring that witnesses "can't give character statements."

Wells also was precluded from introducing witnesses who would have provided probative evidence that Rogers had an infatuation with several members of the basketball team and had previously had sexual encounters with members of the basketball team.

In addition, UCB members regularly asked leading questions of Rogers and her witnesses that clearly were intended to assist in justifying their preconceived notions of Wells' guilt.

During the hearing, Wells truthfully testified that: (1) the sexual intercourse was consensual; (2) Rogers never said "no" at any point during their encounter; (3) Wells was sober on the evening in question; and (4) Wells could never rape a woman in light of the fact that his sister was a victim of rape.

On August 3, 2012, without waiting for vital laboratory results and without hearing from anyone competent about the dispositive forensic evidence, Xavier issued its decision ("Decision") and sent a letter to Wells informing him that he had been "found . . . responsible for rape." Xavier expelled Wells.

On or about August 10, 2012, Wells filed a written appeal of the UCB's determination to an "Appeal Board." The Handbook does not permit an in-person appeal. The Handbook states an appeal and subsequent review will be granted for any of the following reasons: (a) there is a denial of the elements of a fair hearing; (b) the finding is not supported by the evidence; (c) the sanctions imposed can be shown to be arbitrary and capricious; or, (d) there is new information to present that was not available at the time of the hearing, and that may have a bearing on the original decision.

The Handbook states an Appeal Board will determine whether to grant or deny an appeal request based on the following standard: "Does the appeal provide sufficient justification of one of the four reasons set forth in the [Handbook]."

The Handbook provides twenty business days to consider the appeal, presumably to allow for thorough and thoughtful consideration. The Appeal Board, however, denied Wells' appeal two business days after receipt.

The Appeal Board failed to consider that the UCB denied Wells the elements of a fair hearing, the UCB's finding was not supported by the evidence and the sanctions imposed against Wells were arbitrary and capricious. The Appeals Board, like the UCB, refused to consider the findings of Deters' trained professionals or a forensic analysis of the rape kit despite its authority – and obligation – to consider "new information."

***Xavier's Defamatory Press Release***

On August 21, 2012, Xavier announced in a written statement Wells' expulsion based on a "serious violation of the Code of Student Conduct" that compromised Xavier's "safe and nurturing environment." ("Statement.") The Statement was widely publicized via print, television, and online news and sports media outlets, including Xavier's athletics website.

To this day, Xavier maintains that Wells raped Rogers.  It is believed that Rogers has since recanted her story and admitted that the sex with Wells was consensual.

***Prosecutor Refuses to Press Charges***

On August 28, 2012, Deters announced a grand jury sitting in Ohio had declined to charge Wells with any crime.  Deters commented on his office's findings and openly questioned Xavier's decision to expel Wells:

> We always take allegations of this nature very seriously.  I assigned senior assistant prosecutors to this case to review all of the evidence and to conduct a complete presentation to the Hamilton County Grand Jury. After this office conducted an independent review of all of the evidence, it was presented to a Grand Jury yesterday. The Grand Jury declined to charge Dezmine Wells with any criminal offense.  I have nothing but the greatest respect for Xavier University, and in particular Fr. Graham.  I would sincerely hope the institution would revisit this situation.

Deters characterized Xavier's investigation as "fundamentally unfair" and emphasized that "there is something flawed with a procedure where a young man and his accuser appear before a group of people, which I would suggest probably isn't well trained in assessing these types of cases, and they sit there and tell their stories. No lawyers, no nothing. There's just something wrong with that."

Deters, a vocal advocate for aggressive prosecution of violent criminals, stated, "If I thought [Wells] did this, he'd be in prison. I wouldn't pull any punches."  Deters further explained that he is "not known as soft on crime by any stretch of the imagination," but he also is "very sensitive of people being accused of things where it doesn't even reach anything close to a standard of proof that [the district attorney's office] would even think of accepting."

***Wells Leaves Xavier***

On September 4, 2012, Wells announced that he was transferring to the University of

Maryland. National Collegiate Athletic Association ("NCAA") bylaws require a student-athlete transferring from one Division I member institution, such as Xavier, to another Division I member institution, such as Maryland, to wait one academic year before being eligible to play intercollegiate sports.[3] In light of the injustice suffered by Wells because of Defendants' fundamentally unfair treatment, the NCAA granted a waiver from its bylaws and permitted Wells to play with the Maryland men's basketball team immediately.

*Wells' Claims*

Wells commenced this action on August 20, 2013. On September 10, 2013, Wells filed an Amended Complaint. Wells asserts eleven causes of action against Defendants.

Defendants do not move against Wells' first (breach of contract), second (intentional infliction of emotional distress) and eleventh (negligence) claims, admitting by omission that Wells has legitimate grounds to challenge Defendants' behavior. Defendants move to dismiss Wells' other claims, addressing claims based on defamation, vacatur of the UCB Arbitration Decision[4] and Title IX violations.

## ARGUMENT

A court considering a Fed.R.Civ.P. 12(b)(6) motion to dismiss must "construe the complaint in a light most favorable to plaintiffs, accept all plausible well-pled factual allegations as true, and draw all reasonable inferences in plaintiffs' favor." *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

---

[3] The NCAA also has an "Expulsion Rule" requiring student-athletes expelled from any institution, for whatever reason, to sit out for one season following expulsion.

[4] Wells concedes that his seventh and eighth claims for vacatur are barred by the statute of limitations.

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Plaintiff satisfies this standard.

## I.  <u>WELLS PROPERLY ALLEGES  LIBEL</u>

Under Ohio law, a plaintiff making a claim for defamation must show that there was: (1) a false statement; (2) defamatory to plaintiff; (3) published to a third party; (4) by a defendant who was at least negligent; and (5) damaging to plaintiff's reputation.  *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 312 (6th Cir. 2000).

### A.  **Wells Properly Alleges Libel *Per Se* Arising Out of the Injury to Wells' Personal Reputation (Count III)**

Defamation *per se* occurs if a statement, on its face, is defamatory.  *Wagner v. Circle W. Mastiffs*, 732 F.Supp.2d 792, 804-05 (S.D.Ohio 2010)  (citations omitted).  Examples of defamation *per se* applicable to the claims here include words that: "import a charge of an indictable offense involving moral turpitude or infamous punishment"; "tend to injure a person in his trade or occupation"; and "tend to subject a person to public hatred, ridicule, or contempt." *Id.*  [I]n cases of defamation *per se*, the law presumes the existence of damages."  *Id.*

On August 21, 2012, Xavier and Father Graham released their Statement which <u>twice</u> proclaims Wells committed a "serious violation" of Xavier's Code of Student Conduct ("Code").  Complaint ¶ 74.  This accusation is false.  Wells engaged in consensual sex with Rogers and committed no action which violates the Xavier Code.  Complaint ¶ 22.

Second, there can be no doubt that the false Statement is defamatory to Wells.  The Statement forever falsely taints and permanently damages Wells.  Wells will forever be known as a student who was expelled for a rape (that did not occur).

Third, the Statement was widely publicized via print, television and online news[5] and

---

[5] As recently as this week, a Washington Post article, while praising Wells for his leadership of the Maryland

(continued…)

sports media outlets, including Xavier's athletics website.[6]

Fourth, Xavier's and Father Graham's Statement was libelous *per se,* proclaiming that Wells had committed an indictable offense involving moral turpitude.

Defendants' rationalization that they were simply reporting the outcome of the hearing, Def. Mem. at 9,[7] is belied by their own words. Xavier and Father Graham affirmatively declared that Wells had committed a "serious violation" of Xavier's Code not that there merely was a UCB finding of a violation. Rape, an indictable offense, *see* Ohio Rev. Code § 2907.02 (declaring rape a first degree felony), calls into question Wells' moral character. The Statement clearly injured Wells' personal reputation. Such false statements are defamatory *per se. Shoemaker v. Community Action Org. of Scioto Cty., Inc.,* 06CA3121, 2007 WL 2070365, at *4 (Ohio Ct.App. July 16, 2007) (false allegations of sexual harassment constitute defamation *per se*); *Blatnik v. Avery Dennison Corp.*, 148 Ohio App.3d 494, 505 (Ohio Ct.App. 2002) (same).

The Court should deny Defendants' request to dismiss Wells' third claim for libel *per se* arising out of the injury to Wells' personal reputation.

B.   **Wells Properly Alleges Libel *Per Se* Arising Out of the Injury to Wells' Athletic and Professional Reputation (Count IV)**

Xavier's and Father Graham's Statement furthermore was libelous *per se* because it injures Wells in his trade and occupation. Wells has worked his entire life to develop his career in basketball. Xavier's and Father Graham's Statement permanently damages Wells'

---

(continued)

basketball team, focuses in the very beginning on Wells' expulsion from Xavier for sexual assault. *See http://www.washingtonpost.com/blogs/terrapins-insider/wp/2013/10/21/with-an-eye-on-the-past-dez-wells-looks-to-carve-own-legacy-with-the-terps/.*

[6] *See Xavier University Announces The Expulsion of Sophomore Dezmine Wells*, Aug. 21, 2012, http://www.goxavier.com/sports/m-baskbl/spec-rel/082112aae.html?CFID=5104382&CFTOKEN=c5164ccae39108
4-269FAB33-5056-9E09-2D1DB6EB70691130&jsessionid= 17AF517E58E1909312741711C52CDA44.cfusion.

[7] References to "Def. Mem." refer to Defendants' Memorandum of Law in support of their Motion to Dismiss, dated October 2, 2013. Dkt. #12.

professional reputation across the country. Wells will leave college and will likely face difficulties in obtaining employment as a result of the false and defamatory Statement. Professional basketball teams undoubtedly will be more hesitant to draft or sign Wells as a result of Defendants' actions and the Statement. Indeed, professional sports teams are historically reluctant to draft or sign student-athletes who have been accused of criminal activity.[8]

The Court should deny Defendants' request to dismiss Wells' fourth claim for libel *per se* arising out of the injury to Wells' athletic and professional reputation.

### C.  Wells Properly Alleges Libel Arising Out of Defendants' Reckless Disregard and Malice (Count V)

Xavier and Father Graham were also negligent and reckless in their proclamation that Wells had committed a "serious violation" of the Code. Xavier and Father Graham conducted a fundamentally flawed investigation, failed properly to analyze and consider the rape kit's findings, refused to consider exculpatory evidence, rushed to a final judgment of Wells before receiving the full laboratory results and Deters' findings, ignored Deters' requests to delay a final judgment until he could complete his investigation and made irrational, prejudicial and improper decisions about which witnesses could and could not testify. Complaint ¶¶ 38-77, 146.

The Court should deny Defendants' request to dismiss Wells' fifth claim for libel arising out of the Statement's reckless disregard of truth or falsity and/or malice.

### D.  Wells Properly Alleges Libel *Per Quod* (Count VI)

"[A] statement is defamatory *per quod* if it can reasonably have two meanings, one innocent and one defamatory. Therefore, when the words of a statement are not themselves, or

---

[8] For example, no National Basketball Association ("NBA") team expressed interest in current NBA player Gary Neal after he was **acquitted** of rape in 2005, even though Neal had a stellar collegiate career at LaSalle University and Towson University. Only years later, after Neal had toiled in European leagues, did NBA teams even give him a chance. *See* Anna Katherine Clemmons, *Rookie challenge* (Apr. 7, 2011), http://sports.espn.go.com/nba/news/story?id=6303394.

*per se,* defamatory, but they are susceptible to a defamatory meaning, then they are defamatory *per quod.*" *Wagner*, 732 F.Supp.2d at 804-05 (citations omitted); *see also Northeast Ohio Elite Gymnastics Training Ctr., Inc. v. Osborne*, 916 N.E.2d 484, 487 (Ohio Ct.App. 2009) (defamation *per quod* occurs when material is defamatory through *interpretation or innuendo*").

At a minimum, Xavier's and Father Graham's Statement that Wells committed a "serious violation" of the Code warranting expulsion undoubtedly was interpreted to mean that Wells had committed a heinous act, rape. The Statement forever falsely taints and permanently damages Wells as a student who was expelled from his university for a rape. As a result of the Statement, Wells suffered special damages by being forced to expend funds considering and visiting other colleges and ultimately transferring and moving to the University of Maryland.

The Court should deny Defendants' request to dismiss Wells' sixth claim for libel *per quod*.

## II. WELLS PROPERLY ALLEGES TITLE IX VIOLATIONS

Wells is a victim of Defendants' overreach aimed at pleasing OCR and sending a message that their prior insensitivity to assault victims was being rectified. In other words, Wells, as will be proven at trial, was the victim of reverse gender discrimination.

"No person in the United States shall, on the basis of sex, be… subjected to discrimination under any education program or activity receiving Federal financial assistance." Title IX, 20 U.S.C. § 1681(a). Students – male and female – subject to a university disciplinary hearing can state Title IX claims under four possible standards: the "erroneous outcome" standard, "selective enforcement" standard, "deliberate indifference" standard, and "archaic assumptions" standard. *Doe v. University of the South*, 687 F.Supp.2d 744, 756 (E.D. Tenn.

2009), *quoting Mallory v. Ohio Univ.*, 76 Fed.App'x 634, 638 (6th Cir. 2003).[9]  Wells properly alleges Title IX violations pursuant to the erroneous outcome and deliberate indifference standards.

A. **Xavier Violated Title IX By Reaching an Erroneous Outcome on the Basis of Sex (Count IX)**

A Title IX erroneous outcome claim has two elements: (1) an erroneous outcome; and (2) that gender bias was a motivating factor behind the erroneous outcome.  *See Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994) (describing standard for Title IX erroneous outcome claims).  Wells satisfies both of the elements.

An erroneous outcome is demonstrated by "particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary hearing."  *Id.*  "[T]he pleading burden in this regard is not heavy."  *Id.*  A plaintiff satisfies the erroneous outcome element by alleging "evidentiary weaknesses behind the finding of an offense, such as a motive to lie on the part of the complainant or witnesses, particularized strengths of the defense, or other reason to doubt the veracity of the charge," including "procedural flaws affecting the proof."  *Id.*

The hearing in this case was procedurally flawed in several material ways.  The credible evidence clearly does not support the outcome by a preponderance.  A young man was found responsible for a rape he did not commit.

The erroneous outcome was the result of Xavier rushing to judgment before receiving the full laboratory results and Deters' findings, ignoring Deters' requests to wait until he could complete his investigation, placing the burden of proof on Wells, failing to have properly trained UCB members, failing to involve in the hearing someone competent to testify about the forensic

---

[9] Title IX is enforceable through an implied private right of action, *Cannon v. University of Chicago,* 441 U.S. 677 (1979), for monetary damages as well as injunctive relief, *Franklin v. Gwinnett County Pub. Sch.,* 503 U.S. 60 (1992).

evidence, including the rape kit's findings, not providing Wells with a competent advisor, and making irrational, prejudicial and improper decisions about which witnesses could and could not testify. Complaint ¶¶ 42-65.

To establish the gender bias element of a Title IX erroneous outcome claim, the plaintiff must "allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Yusuf*, 35 F.3d at 715; *see also Mallory*, 76 Fed.App'x at 638 (same). Courts have identified a non-exhaustive list of circumstances which sufficiently allege gender bias, including "patterns of decision-making that… tend to show the influence of gender." *Yusuf*, 35 F.3d at 715; *see also Mallory*, 76 Fed.App'x at 638 (same).

Xavier's and Father Graham's conduct in this matter was driven by gender and, more particularly, their overreaction to Xavier's past failures to adjudicate assault cases properly and the resulting OCR investigation and threats of punishment. In the prior incidents, Xavier failed properly to protect the rights of female sexual assault victims, Complaint ¶¶ 34-36, resulting in the OCR's investigation and jeopardizing the University's federal funds. In the time period immediately before Wells' expulsion, Xavier, facing the a loss of its federal funding, settled with OCR, promised to overhaul its handling of sexual assault allegations and to protect purported victims of sexual assault and harassment. Complaint ¶ 37.

Xavier's good intentions resulted in overreaction and a willingness to make Wells a scapegoat to avoid allegations that Xavier was continuing its past pattern of failing to protect female sexual assault victims. Wells became the face of Defendants' "new" attitude and gender "sensitivity." Wells was the star player of one of the best college basketball teams in the country. The allegations were certain to draw national media interest. Faced with both OCR and public scrutiny, Xavier and Father Graham reacted by punishing Wells severely, regardless of

the truth, to prove their new approach to assault allegations. Wells would not have had his rights ignored had Xavier not had a history of mishandling assault allegations. It is no coincidence that the compromised UCB hearing – a hearing that was pushed along so quickly that Defendants refused to present competent witnesses, train UCB members adequately or await findings from trained professionals – commenced the day after Xavier announced its settlement with OCR.

A Title IX erroneous outcome claim against a university can be based on the plaintiff's allegation that males accused of sexual assault or harassment are treated unfairly. *Yusuf*, 35 F.3d at 716. In the wake of the OCR investigation, Xavier steamrolled the investigation and prosecution of Wells. It is proper to allow discovery to understand the extent that Defendants' experience with OCR dictated their motives and the results. Discovery also is appropriate to determine if other accused male students similarly have been unfairly treated.

Defendants erroneously claim that there is no evidence that Wells' gender impacted the outcome of the hearing. Def. Mem. at 12-15. Tellingly, Defendants' ignore their prior failings in handling sexual assault allegations and the OCR investigation and settlement. As discussed above, Defendants' past failings in this regard created a palpable urgency for them to ensure the swift investigation and prosecution of male students accused of sexual assault, particularly a high profile target like Wells. Wells, based on his gender, was the unfortunate and undeserving victim of Defendants' gross overcorrection to the prior mishandling of sexual assault allegations. Defendants also erroneously suggest that their conduct is acceptable if the Handbook's policies are gender neutral. Def. Mem. at 11-12. The Handbook's neutrality does not excuse faulty implementation and misapplication of the Handbook's policies and procedures as the result of gender bias.

Defendants' motion to dismiss Wells' ninth claim for a Title IX violation based on an

erroneous outcome should be denied.

     **B.**     **Xavier Violated Title IX As A Result of Its Deliberate Indifference to the Evidence (Count X)**

A Title IX deliberate indifference claim results from "an official decision by the recipient of federal funds not to remedy the violation [of Title IX]." *Sarver v. Jackson*, 344 Fed.App'x 526, 531 (11th Cir. 2009), *quoting Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 276 (1998). Under the "deliberate indifference" standard, a plaintiff must demonstrate "that an official of the institution who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct." *Mallory*, 76 Fed. App'x at 638 (citations omitted). Second, a plaintiff must demonstrate that the defendant's indifference was "motivated by [the plaintiff's] gender." *Doe*, 687 F.Supp.2d at 758. Wells satisfies both of these elements.

Father Graham was deliberately indifferent to the fundamentally flawed investigation and prosecution of Wells and, indeed, actively encouraged the rush to judgment. Father Graham ignored Deters' concerns about Rogers' accusations and requests to delay a hearing until after the facts had been properly investigated. Complaint ¶¶ 40-44. Despite being aware of the evidentiary and procedural flaws, Father Graham pressed for the hearing to commence – and end – as soon as possible. Complaint ¶¶ 140-142.

OCR mandated that all allegations of sexual assault be resolved in an "equitable" manner. *See* Def. Mem. at 5. Instead, Father Graham assumed OCR only cared about protecting female complainants and not the accused. As a result, Father Graham ignored Wells' rights and deprived him, a male student accused of sexual assault, of his right to a fair hearing.

In their zeal to please OCR, Xavier and Father Graham were willing to ignore fundamental precepts of fairness. At a minimum, a question of fact exists as to whether Father Graham's support for the flawed investigation and adjudication of this matter was motivated by a

gender-driven bias against males. Such a question cannot be decided on a motion to dismiss.

Defendants make no argument in support of its position that Wells failed to state a cause of action for its tenth claim for a Title IX violation based on deliberate indifference.[10] Instead, Defendants argue that Title IX does not impose individual liability on a defendant. *See* Def. Mem. at 16-17. While Wells does not dispute that Father Graham cannot be held individually liable for Title IX violations, Xavier is responsible for its as well as Father Graham's Title IX violations based on deliberate indifference. Defendants make no argument to the contrary.

Defendants' motion to dismiss Wells' tenth claim for a Title IX violation based on deliberate indifference should be denied.

### III. FATHER GRAHAM IS INDIVIDUALLY LIABLE FOR HIS WRONGFUL ACTS

Defendants argue that Wells' claims are asserted against Xavier in their entirety and not against Father Graham, and thus that Father Graham should be dismissed from the action. *See* Def. Mem. at 16-17. Defendants are wrong. The claims are addressed to both Defendants' actions as well as to both Defendants' liability.

As a preliminary matter and as discussed above, Defendants do not move to dismiss Wells' first (breach of contract), second (intentional infliction of emotional distress) and eleventh (negligence) claims for relief, all of which are asserted against both Defendants. *See* Def. Mem. at 1. There is thus no basis to dismiss these claims as against Father Graham. Moreover, research has not revealed, and Defendants do not cite, any authority in support of dismissing Wells' common law claims against Father Graham based on his status as President of Xavier. Defendants are quite simply manufacturing that argument without having any legal support.

---

[10] Defendants are barred from raising these arguments for the first time in their reply memorandum. *Kingsley v. Brundige*, 513 Fed.Appx. 492, 496, n.2 (6th Cir. 2013).

Father Graham also is individually liable for libel. "[A]ll persons who cause or participate in the publication of libelous or slanderous matter are responsible for such publication." *Cooke v. United Dairy Farmers, Inc.*, 02AP-781, 2003 WL 21389646, at *4 (Ohio Ct.App. June 17, 2003) (citation omitted). Father Graham was the driving force behind Wells' unfair investigation, hearing, expulsion and the defamatory Statement. Under such circumstances, Father Graham is liable for the Statement in his individual capacity. *See Goudy v. Dayton Newspapers, Inc.*, 237 N.E.2d 909, 914 (Ohio Ct.App. 1967) ("The managing editor of a newspaper is individually liable for a libel printed in his newspaper, even though he does not have actual knowledge of the libel printed"); *Schoedler v. Motometer Gauge & Equipment Corp.*, 134 Ohio St. 78, 81 (Ohio 1938) ("Where slander is uttered by one or more persons, pursuant to a conspiracy which includes among its purposes the defamation of another, all parties to the conspiracy are jointly liable").

Defendants' request that Father Graham be dismissed from this action should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests the Court to deny Defendants' Motion to Dismiss Wells' third, fourth, fifth, sixth, ninth and tenth claims, and grant such other relief as the Court deems just and proper.

Dated: October 23, 2013                           Respectfully submitted,

   CARR & SHIVERDECKER                      PETER R. GINSBERG LAW, LLC

By: s/ Merlyn D. Shiverdecker          By: s/ Peter R. Ginsberg
    Merlyn D. Shiverdecker                       Peter R. Ginsberg, *pro hac vice*
    817 Main Street, Suite 200                   12 East 49th Street, 30th Floor
    Cincinnati, Ohio 45202                       New York, NY 10017
    (513) 651-5652                               (646) 374-0030
    carrshiverdecker@yahoo.com                   pginsberg@prglaw.com
    *Attorneys for Plaintiff*                    *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss was served electronically via the Court's ECF system this the 23rd day of October, 2013 upon:

Roger K. Schoeni
Rebecca L. Cull
Kohnen & Patton, LLP
201 East Fifth Street
PNC Center, Suite 800
Cincinnati, OH 45202
*Attorneys for Defendants*

s/ Peter R. Ginsberg
Peter R. Ginsberg