# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| DEZMINE WELLS, | : | Case No. 1:13-CV-575 |
| | : | |
| Plaintiff, | : | (Judge Spiegel) |
| | : | |
| vs. | : | **REPLY IN SUPPORT OF MOTION TO** |
| | : | **DISMISS OF DEFENDANTS XAVIER** |
| XAVIER UNIVERSITY, et al., | : | **UNIVERSITY AND FATHER** |
| | : | **MICHAEL J. GRAHAM** |
| Defendants. | : | |

    Defendants, Xavier University ("Xavier" or the "University") and Father Michael J. Graham ("Fr. Graham") (collectively "Defendants"), submit the following Reply in support of their Motion to Dismiss Plaintiff's Third, Fourth, Fifth, Sixth, Ninth, and Tenth Claims for Relief.[1] Plaintiff has failed to allege or argue that Xavier's Statement was false, or that the outcome of his disciplinary proceeding was influenced by his gender. Finally, Plaintiff's Amended Complaint contains no allegation of actionable conduct against Fr. Graham in his individual capacity. This Reply is supported by the attached Memorandum of Law.

                                                   Respectfully submitted,

                                                   /s/ K. Roger Schoeni
                                                 K. Roger Schoeni (0004812)
                                                 Rebecca L. Cull (0083542)
                                                 Kohnen & Patton, LLP
                                                 201 East Fifth Street
                                                 PNC Center, Suite 800
                                                 Cincinnati, OH 45202
                                                 Phone: (513) 381-0656
                                                 Fax: (513) 381-5823
                                                 email: rschoeni@kplaw.com
                                                 rcull@kplaw.com
                                                 Attorneys for Defendants

---

[1] Contrary to the assertions made in Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Memorandum in Opposition"), Defendants do not concede that any of the claims not addressed here have merit, only that a motion to dismiss is not the appropriate vehicle for addressing those claims. When procedurally appropriate, Defendants intend to move for judgment in their favor on any remaining claims.

**MEMORANDUM OF LAW**

I.    **LAW AND ARGUMENT**

Plaintiff Dezmine Wells ("Mr. Wells") has conceded in his Memorandum in Opposition that his Seventh and Eighth Claims for Relief must be dismissed, and he has conceded that there is no basis for liability against Fr. Graham individually in his Tenth Claim for Relief. Although Defendants did not move to dismiss Mr. Wells' First, Second or Eleventh Claims for Relief, it is not because Defendants believe those claims have merit, only that a motion to dismiss is not the appropriate vehicle for challenging them. However, as addressed in Defendants' Motion to Dismiss and the present Memorandum of Law, Mr. Wells' Third, Fourth, Fifth, Sixth, Ninth and Tenth[2] Claims for Relief are ripe for dismissal under Fed.R. 12(b)(6).

The arguments asserted by Mr. Wells in support of the claims addressed in Defendants' Motion to Dismiss do not save those claims from dismissal. In the Memorandum in Opposition, counsel for Mr. Wells strays far from the actual allegations in the Amended Complaint, embellishing and misrepresenting his own pleading in an effort to preserve these meritless claims. For instance, what was clearly and exclusively defined as "Xavier's Statement" in the Amended Complaint became "Xavier's and Father Graham's Statement" in the Memorandum in Opposition. (Amended Complaint, ¶¶73-74, 97-125; Memorandum in Opposition, pgs.11, 12, 14). Further, the Amended Complaint contains no allegation of potential penalties or sanctions related to the investigation conducted by the U.S. Department of Education, Office of Civil Rights ("OCR"), but the Memorandum in Opposition argues that the OCR investigation "jeopardized the University's federal funds", and Xavier acted against Mr. Wells to "prove their

---

[2] Plaintiff's attempt to limit Defendants' ability to further argue for the dismissal of his Tenth Claim for Relief as to Xavier University relies on a misrepresentation of the case cited – *Kingsley v. Brundige*, 513 Fed. Appx. 492 (6th Cir. 2013) – which denied a party's attempt to raise an argument for the first time at the appellate level and in a reply brief, not a reply in a district court proceeding.

new approach to assault allegations." (Compare: Amended Complaint, ¶34-37 with Memorandum in Opposition, pgs. 16-17). Finally, although the Amended Complaint makes no factual allegation demonstrating Fr. Graham's involvement in the timing of the disciplinary process, the Memorandum in Opposition baselessly claims that Fr. Graham "actively encouraged the rush to judgment" and "pressed for the hearing to commence – and end – as soon as possible." (Memorandum in Opposition, p.18).

The Memorandum in Opposition is replete with allegations that are wholly unsupported by the facts alleged in the Amended Complaint and that are strongly disputed by Defendants. Still, even considering such allegations, Mr. Wells' Third, Fourth, Fifth, Sixth, Ninth and Tenth Claims for Relief must be dismissed. Mr. Wells' various libel claims – the Third, Fourth, Fifth and Sixth Claims for Relief – all require a false statement, and the allegations of the Amended Complaint itself demonstrate that the only statement complained of is not false. Moreover, the unsupported legal conclusions alleged in connection with Mr. Wells' Ninth and Tenth Claims for Relief fail to demonstrate that Xavier acted with gender bias against Mr. Wells, and therefore, those claims must also be dismissed. Finally, Mr. Wells has not alleged any conduct by Fr. Graham sufficient to support a cause of action against him individually, and therefore, Fr. Graham must be dismissed from this suit.

    **A.    Mr. Wells Has Not Alleged that Xavier Made a False Statement Against Him; Therefore His Libel Claims Must be Dismissed.**

Four of the claims asserted by Mr. Wells in the Amended Complaint arise from an allegedly libelous statement released by Xavier. As acknowledged by Mr. Wells, in order for this statement to be actionable, it must be false. (Memorandum in Opposition, p.11). Mr. Wells fails entirely to address the truthfulness of the Statement actually made by Xavier, and instead,

attacks the truthfulness of distorted versions. As alleged in the Amended Complaint, Xavier's Statement reads:

> The Xavier University Conduct Board (UCB), made up of faculty, students and administrators, found Xavier sophomore and basketball player Dezmine Wells responsible for a serious violation of the Code of Student Conduct. The punishment for the violation is expulsion from the University. While we understand there is heightened interest in this situation because it involves a student-athlete, we must reiterate that first and foremost Xavier's interest and responsibility to all of our students is to provide a quality education in a safe and nurturing environment. A serious violation of Xavier's Code of Student Conduct will not be tolerated. All Xavier students are subjected to the same protections and consequences. Because of Federal privacy law restrictions, no additional comments may be made in order to protect the privacy of those involved, and to honor the integrity of the UCB process.

(Amended Complaint, ¶74). In the Memorandum in Opposition, it is cut apart and pasted together in a distortion of the Statement: "On August 21, 2012, Xavier announced in a written statement Wells' expulsion based on a 'serious violation of the Code of Student Conduct' that compromised Xavier's 'safe and nurturing environment.'" (Memorandum in Opposition, p.8). Mr. Wells further argues that Xavier's Statement "proclaims Wells committed a 'serious violation' of Xavier's Code of Student Conduct…" (*Id*. at p.11) and that "Xavier and Father Graham affirmatively declared that Wells had committed a 'serious violation' of Xavier's Code not that there merely was a UCB finding of a violation." (*Id.* at p.12). Mr. Wells further asserts that the Statement was libelous by "proclaiming that Wells committed an indictable offense involving moral turpitude". (*Id*.)

The black and white language of Xavier's Statement proves otherwise:

> The Xavier University Conduct Board (UCB), made up of faculty, students and administrators, found Xavier sophomore and basketball player Dezmine Wells responsible for a serious violation of the Code of Student Conduct.

(Amended Complaint, ¶74). Xavier's Statement definitively does not state that Mr. Wells "committed" a violation of the Code of Student Conduct or Ohio law, or that he "compromised

4

Xavier's 'safe and nurturing environment'", nor does it assert that he committed an "indictable offense" or that "moral turpitude" was involved. In fact, the Statement does not use any words to connote sexual misconduct, as Mr. Wells now argues. Instead, the Statement accurately and truthfully reflects that, as alleged in the Amended Complaint, the UCB found Mr. Wells responsible for a serious violation of the Code of Student Conduct. Moreover, the Statement specifically limits further comments by Xavier to protect students' privacy interests. Again, the Amended Complaint itself confirms the truthfulness of the Statement, alleging at Paragraph 66, that Xavier informed Mr. Wells that he had been found responsible for a violation of the Code of Student Conduct.

Mr. Wells accurately states that Ohio law counts publication of sexual harassment allegations known to be false as defamation *per se*. *Blatnik v. Avery Dennison Corp.*, 148 Ohio App.3d 494, 2002-Ohio-1682. But Xavier's Statement is not comparable to the conduct of the defendant in *Blatnik*, which published specific allegations of sexual harassment to its employees after acknowledging that the allegations were false. *Id*. at 507. Here, Xavier did not publish false allegations of sexual assault, but merely the actual outcome of a disciplinary hearing conducted in accordance with the University's established procedures.

Mr. Wells' disagreement with the outcome of that disciplinary hearing does not render Xavier's Statement false. Mr. Wells' Memorandum in Opposition claims that Xavier's Statement is false because Mr. Wells believes he engaged in consensual sexual relations with a female student at Xavier. (Memorandum in Opposition, p.11). Xavier's Statement, however, does not report that Mr. Wells engaged in non-consensual sexual relations with a female student. It accurately and truthfully states that the UCB found Mr. Wells responsible for a violation of the

5

Code of Student Conduct. Lacking a false statement by Xavier, Mr. Wells' Third, Fourth, Fifth and Sixth Causes of Action must be dismissed.

> **B.  Mr. Wells' Erroneous Outcome Claim is Not Supported by Allegations of Gender Bias; Therefore, His Ninth Claim Must be Dismissed.**

Mr. Wells' Ninth Claim for Relief alleges that Xavier's disciplinary process resulted in an "erroneous outcome" due to gender bias and therefore violated Title IX. (Amended Complaint, ¶¶134-138). Mr. Wells' Amended Complaint fails to provide any factual allegations in support of this claim. Mere "[a]llegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss." *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994).

The only argument made by Mr. Wells in his attempt to demonstrate that gender bias affected the outcome of his hearing is that Xavier was reacting to the OCR's recent investigation. (Memorandum in Opposition, pgs.16-17). First, many of the assertions made in the Memorandum in Opposition in support of this argument do not accurately reflect the allegations made in the Amended Complaint, much less reality. In this regard, the Amended Complaint alleges:

> 34.   In January 2012, the United States Education Department's Office of Civil Rights ("OCR") opened an investigation into Xavier's handling of two alleged sexual assault cases in 2008 and 2009.
>
> 35.   OCR's investigation focused on allegations that Xavier allowed a male student accused of sexual harassment to remain on campus after an alleged assault, without regard to the rights of two women who claimed to have been sexually assaulted by the male student.
>
> 36.   In February 2012, OCR opened an additional investigation into Xavier's handling of a third sexual assault case. OCR conducted an extensive investigation of the three incidents.

6

> 37. On August 1, 2012, Xavier announced that, pursuant to an agreement with OCR, it would establish training and reporting programs designed to protect victims of sexual assault and harassment. Xavier also agreed to pay for counseling for one of the women who claimed she had been sexually assaulted and to ensure her safety on campus.
> …
>
> 44. For fear that it would once again alienate OCR, and because of Fr. Graham's own political concerns, Xavier ignored Deters' request and advice.

In the Memorandum in Opposition, these limited allegations are extrapolated to include accusations that:

> …the OCR investigation jeapordiz[ed] the University's federal funds. In the time period immediately before Wells' expulsion, Xavier, facing the a [*sic*] loss of its federal funding, settled with OCR, promised to overhaul its handling of sexual assault allegations and to protect purported victims of sexual assault and harassment.
> Xavier's good intentions resulted in overreaction and a willingness to make Wells a scapegoat to avoid allegations that Xavier was continuing its past pattern of failing to protect sexual assault victims. Wells became the face of Defendants' 'new' attitude and gender 'sensitivity.' … The allegations were certain to draw national media interest. Faced with both OCR and public scrutiny, Xavier and Father Graham reacted by punishing Wells severely, regardless of truth to prove their new approach to assault allegations. Wells would not have had his rights ignored had Xavier not had a history of mishandling assault allegations…

(Memorandum in Opposition, p.16), and

> … Defendants' past failings in this regard created a palpable urgency for them to ensure the swift investigation and prosecution of male students accused of sexual assault, particularly a high profile target like Wells. Wells, based on his gender, was the unfortunate and undeserving victim of Defendants' gross overreaction to the prior mishandling of sexual assault allegations.

(Memorandum in Opposition, p.17). These exaggerated claims have no basis in the facts and circumstances actually surrounding the OCR investigation, nor do they fairly reflect the allegations made in the Amended Complaint. Even in attempting to defeat a motion to dismiss, plaintiffs are not given the opportunity to recraft and sensationalize their own pleadings in an attempt to create a valid claim.

However, even accepting as true the allegations in the Amended Complaint, the timing of Xavier's OCR resolution does not constitute evidence of an impermissible influence of gender on Mr. Wells' disciplinary hearing. The Amended Complaint does not allege that the disciplinary process was changed as a result of the OCR resolution in order to find more male students responsible for sexual assault, and there is no allegation that the OCR resolution motivated Xavier to treat male students accused of sexual assault any differently than it treated female students accused of sexual assault.

As discussed in detail in Defendants' Motion to Dismiss, even accepting as true the complaints articulated by Mr. Wells about the disciplinary process, he does not demonstrate that he was treated differently than an accused female student would have been treated or that his gender affected the outcome in his particular case. There is no factual allegation to support a claim that any of the alleged procedural deficiencies were the result of Mr. Wells' gender. And, as the Sixth Circuit has stated with respect to Title IX complaints of unfair disciplinary processes: "one case by an individual who was subjectively dissatisfied with a result does not constitute a 'pattern of decision-making,' referred to in *Yusuf* as a basis for finding bias." *Mallory v. Ohio University*, 76 Fed. Appx. 634, 640 (6th Cir. 2003). Based on the facts alleged in the Amended Complaint, Mr. Wells has failed to articulate a claim of gender discrimination under Title IX arising from an "erroneous outcome" of a disciplinary proceeding, and Defendants respectfully request that his Ninth Claim for Relief be dismissed.

**C.     Mr. Wells' Deliberate Indifference Claim is Not Recognized by Law or Supported by the Factual Allegations Contained in his Amended Complaint; Therefore His Tenth Claim Must be Dismissed.**

This claim for relief, which refers to the conduct of Fr. Graham only, attempts to shoehorn into this case a Title IX standard primarily reserved for allegations of a school's failure

to respond to sexual harassment. The "deliberate indifference" standard primarily applies when a student claims to have been the victim of sexual harassment or sexual violence by another student or a school representative. See, e.g., *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998); *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629 (1999); *McCoy v. Bd. of Educ.*, 515 Fed. Appx. 387 (6th Cir. 2103); *Mathis v. Wayne Cty. Bd. of Educ.*, 496 Fed. Appx. 513 (6th Cir. 2012); *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356 (6th Cir. 2012); *Patterson v. Hudson Area Schs.*, 551 F.3d 433 (6th Cir. 2009); *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479 (6th Cir. 2006); *Williams v. Paint Valley Loc. Sch. Dist.*, 400 F.3d 360 (6th Cir. 2005); *Winzer v. Sch. Dist. for Pontiac*, 105 Fed. Appx. 679 (6th Cir. 2004); *Doe v. Warren Consol. Schs.*, 93 Fed. Appx. 812 (6th Cir. 2004). Although the Sixth Circuit has been asked once to apply the "deliberate indifference" standard to a disciplinary proceeding challenge, the Court did not rule that the standard was appropriate, but instead assumed "*arguendo* that these standards apply" and affirmed the district court's rejection of the plaintiff's claims as insufficient. *Mallory*, 76 Fed. Appx. at 638.

Aside from the *Mallory* courts' rejection of this claim, only one other district court within the Sixth Circuit has considered the "deliberate indifference" standard in the context of a claim challenging a disciplinary process, and that court rejected the plaintiff's legally insufficient claim on a motion to dismiss. *Doe v. University of the South*, 687 F.Supp.2d 744 (E.D. Tenn. 2009). No other circuits or districts have applied this standard to disciplinary proceedings, instead applying only the "erroneous outcome" or "selective enforcement" standards. *Yusuf*, 35 F.3d at 715; *Bleiler v. College of the Holy Cross*, No. 11-11541, 2013 U.S. Dist. LEXIS 127775 (D.Mass. Aug. 26, 2013). As such, the law regarding "deliberate indifference" under Title IX

does not provide a cause of action for Mr. Wells to challenge the application of Xavier's disciplinary process, and his Tenth Claim for Relief should be dismissed.

However, even if this Court finds that Mr. Wells' "deliberate indifference" claim arising from disciplinary proceedings has some basis in law, Mr. Wells' Amended Complaint fails to sufficiently allege such a claim. To establish a typical "deliberate indifference" claim, the plaintiff must allege:

> (1) the sexual harassment was so severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school,
> (2) the funding recipient had actual knowledge of the sexual harassment, and
> (3) the funding recipient was deliberately indifferent to the harassment.

*Vance v. Spencer County Public Sch. Dist.*, 231 F.3d 253, 258-59 (6th Cir. 2000) (quoting *Soper v. Hoben*, 195 F.3d 845, 854 (6th Cir. 1999) (citing *Davis*, 526 U.S. at 633). "[A] plaintiff may demonstrate [a] defendant's deliberate indifference to discrimination 'only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'" *Vance*, 231 F.3d at 260 (quoting *Davis*, 526 U.S. at 648).

Mr. Wells fails to establish his claim even on the first element. Here, as in *Doe v. University of the South*, Mr. Wells' allegations "do not contain the critical component of any Title IX claim necessary to make a finding under the deliberate indifference standard, namely that the University's alleged actions constituted sexual harassment." *Doe*, 687 F.Supp.2d at 757-758. Therein, a male student, having been found responsible for sexual assault and suspended from the university, sued the university alleging that the university's disciplinary procedures demonstrated deliberate indifference. *Id.* at 757. The male student alleged numerous complaints against the disciplinary system, including holding the hearing two days after informing the male student of the allegations, failing to have a properly trained panel, failing to allow the male

student adequate representation at the hearing, denying the male student the opportunity to present any fact witnesses, and discouraging the male student from appealing by implying that the female student would file criminal charges. *Id.* at 753-754. Still, the district court granted the university's motion to dismiss this claim because the facts pled in the complaint failed "to support a finding that the University's actions were at all motivated by John Doe's gender or sex or constituted gender harassment or sexual harassment." *Id*. at 758.

As discussed above regarding Mr. Wells' "erroneous outcome" claim, the Amended Complaint lacks factual allegations to support Mr. Wells' conclusion that he was subjected to gender discrimination. Even accepting as true all of Mr. Wells' criticisms about the disciplinary process, there is no factual support for the legal conclusion that the damage he allegedly suffered was the product of gender bias or amounts to sexual harassment.

Moreover, there is no indication or allegation that Mr. Wells provided notice or actual knowledge to the University during the UCB process that he was being subjected to sexual harassment or gender discrimination, and therefore, he fails to allege facts to meet the second element of this claim. *Vance*, 231 F.3d at 258. There is no allegation in the Amended Complaint that Mr. Wells alerted anyone at Xavier to the supposed gender discrimination that allegedly caused the adverse outcome in his hearing. Mr. Wells had ample opportunity to do so after the UCB reached its decision through his appeal; yet the Amended Complaint does not allege that Mr. Wells' appeal argued that the UCB decision was the result of gender discrimination.

Instead, according to the Amended Complaint, Mr. Deters is the only person who attempted to make officials at Xavier aware of what the Amended Complaint characterizes as "misconduct" in the disciplinary process. (Amended Complaint, ¶141). Yet none of Mr. Deters' many statements quoted in the Amended Complaint refers to sexual harassment of Mr. Wells or

gender discrimination against him.[3] The Amended Complaint asserts that Mr. Deters expressed concern about the female student's truthfulness, (Amended Complaint, ¶41), but the Amended Complaint does not allege that Mr. Deters or Mr. Wells or anyone else put Fr. Graham and Xavier on notice that Mr. Wells was being subjected to gender discrimination or sexual harassment.[4] Thus, because it does not allege facts supporting the legal conclusion that Xavier had actual knowledge of gender discrimination, the Amended Complaint fails to state a claim of "deliberate indifference" under Title IX.

Finally, the Amended Complaint fails to meet the third element of this claim because it does not allege that the response to any allegedly reported sexual harassment or gender discrimination was "clearly unreasonable in light of the known circumstances." *Vance*, 231 F.3d at 260. In fact, the issues which were supposedly communicated to Fr. Graham – concerns about the female student's credibility – and discussed by Mr. Deters on a radio program – the initial results of a criminal investigation, the lack of attorney representation, and the use of students, faculty and staff on the UCB – are matters clearly addressed by the Dear Colleague letter. (Amended Complaint, ¶¶41, 80; Dear Colleague Letter, p.4, 10, 12). As discussed in the Motion to Dismiss, the procedures and processes properly used in private university disciplinary proceedings are intentionally and distinctively different than the criminal proceedings with which Mr. Deters is familiar.[5] The Dear Colleague Letter requires universities to conduct

---

[3] To be clear, Mr. Deters did not attempt to contact Fr. Graham or anyone else at Xavier until after the UCB hearing was concluded. The pleadings imply that such communications took place prior to the UCB hearing.

[4] Moreover, there is no indication from the Amended Complaint that Mr. Deters had actual knowledge of the disciplinary proceedings that occurred at Xavier, or that he was calling in any capacity other than as an outside observer.

[5] As explained in the United States Department of Education's recent guidance on Title IX,
> Police investigations may be useful for fact-gathering; but because the standards for criminal investigations are different, police investigations or reports are not determinative of whether sexual harassment or violence violates Title IX. Conduct may constitute unlawful sexual harassment under Title IX even if the police do not have sufficient evidence of a … (*continued*)

investigations independent of criminal investigations; instructs universities to provide prompt resolutions that are not unduly delayed by concurrent criminal proceedings; allows universities to determine whether or not to allow legal counsel in disciplinary proceedings; and approves the use of a lay panel in determining the outcome of claims of sexual harassment. Because each of the issues allegedly communicated to Xavier – none of which assert gender discrimination – are addressed by the Department of Education's guidance, and Xavier's policy with regard to each is condoned by the guidance in that letter, Xavier's conduct cannot, as a matter of law, be unreasonable under the circumstances.

In sum, Mr. Wells' deliberate indifference claim fails as a matter of law for a number of reasons. First, it is not recognized as an appropriate standard for considering whether disciplinary proceedings were improperly influenced by gender. Second, Mr. Wells' claim satisfies none of the elements required to prove a deliberate indifference claim in any case. There is no factual support in the Amended Complaint relating any of the deficiencies claimed by Mr. Wells to gender bias or sexual harassment. There is no indication that Xavier was put on notice of gender discrimination or sexual harassment – only concerns about the truthfulness of the female student. Finally, the conduct of Xavier University and Fr. Graham, even as alleged in the Amended Complaint, falls within the conduct recommended and proscribed by the Dear Colleague letter, and therefore, cannot as a matter of law, amount to a "clearly unreasonable"

---

…criminal violation. In addition, a criminal investigation into allegations of sexual violence does not relieve the school of its duty under Title IX to resolve complaints promptly and equitably.
(Dear Colleague Letter at p.10). The Dear Colleague Letter further advises universities that "a school should not delay conducting its own investigation or taking steps to protect the complainant because it wants to see whether the alleged perpetrator will be found guilty of a crime." (*Id*.) It also dictates that schools employ a different standard of proof: "in order for a school's grievance procedures to be consistent with Title IX standards, the school must use a preponderance of the evidence standard (*i.e.*, it is more likely than not that sexual harassment or violence occurred). The 'clear and convincing standard' (*i.e.*, it is highly probable or reasonably certain that sexual harassment or violence occurred), currently used by some schools is a higher standard of proof." (*Id.* at p.11).

response. Therefore, Defendants respectfully request that this Court dismiss Mr. Wells' Tenth Claim for Relief.

### D. The Amended Complaint Alleges No Actionable Conduct by Father Graham.

It is clear throughout the Amended Complaint that no cause of action is asserted against Fr. Graham in his individual capacity, with the exception of the Tenth Claim for Relief, which Mr. Wells has acknowledged provides no basis for individual liability against Fr. Graham. (Memorandum in Opposition, p.19). At the outset of the Amended Complaint, Defendant Xavier University is defined as a separate and distinct entity from Fr. Graham, and the word "Xavier" is defined as only the University, not the University and Fr. Graham. (Amended Complaint, ¶1). As such, the sum total of the factual allegations regarding Fr. Graham in the Amended Complaint are:

41. Deters developed serious concerns about the truthfulness of Rogers' allegations based upon a professional and thorough review of the matter by trained experts.

42. Deters attempted to communicate these serious concerns directly to Father Graham and, when Father Graham failed and otherwise refused to return Deters' messages, Deters communicated these serious concerns to another Xavier official and asked that these serious concerns be communicated to Father Graham.

43. Because of these concerns, Deters requested and advised Xavier not to conduct a hearing on the alleged incident until his Office had completed its investigation. The request was made directly by Deters to Father Graham.

44. For fear that it would once again alienate OCR, and because of Father Graham's own political concerns, Xavier ignored Deters' request and advice.

(Amended Complaint). The Amended Complaint makes no other factual allegations regarding Fr. Graham's conduct or involvement in the UCB process or his involvement or knowledge of Xavier's Statement.[6] Notably, Mr. Wells' Prayer for Relief references only Xavier's conduct:

> 148. Awarding Wells compensatory damages for the injuries he has suffered, including consequential and incidental damages, as a result of Xavier's wrongful conduct in an amount to be determined at trial…
>
> 150. Awarding Wells punitive damages in a just amount for Xavier's willful and wanton conduct….

(Amended Complaint at ¶¶148, 150).

Ohio law is well established that a corporate officer "may not be held liable merely by virtue of his status as a corporate officer. Rather, the true basis of liability is the officer's violation of some duty owed to the third person which injures such third person." *Roberts v. RMB Enterprises*, 197 Ohio App.3d 435, 449, 2011-Ohio-6223. In the absence of allegations that "the corporate officer specifically directed the particular act to be done, or participated or cooperated therein" the claim against an officer in his individual capacity cannot succeed. *Id.*; *Hahn v. Star Bank* (6th Cir. 1999), 190 F.3d 708; *Young v. Featherstone* (1954), 97 Ohio App. 158. Thus, Mr. Wells cannot recover against Fr. Graham individually "based on his status as President of Xavier" alone, (Memorandum in Opposition, p.19), and the Amended Complaint fails to state any actionable claims against him.

For example, the Amended Complaint makes no allegation that Fr. Graham requested, drafted, reviewed, published or had any other involvement in Xavier's Statement; in fact,

---

[6] Paragraphs 1, 3, 10 and 11 also mention Father Graham. However, these paragraphs include allegations to establish jurisdiction and venue, (Amended Complaint, ¶¶10,11), or they represent legal conclusions which are unsupported by the factual allegations made in the Amended Complaint. (*Id.* at ¶¶1,3). For instance, in Paragraph 3, it is alleged that Xavier failed to follow its disciplinary procedures "materially as a result of Father Graham's irresponsible and reckless rush to judgment." However, there is not a single subsequent paragraph that alleges facts to support the legal conclusion that Fr. Graham was involved in the timing of the hearing or pace of the investigation in any way. As such, the legal conclusions set forth in Paragraphs 1 and 3 should be disregarded for purposes of the Motion to Dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007).

throughout the Amended Complaint, the Statement is characterized only as "Xavier's Statement".[7] With regard to the libel claims, although "all persons who cause or participate in the publication of libelous or slanderous matters are responsible for such publication … liability to respond in damages for the publication of defamation must be predicated on a positive act. Nonfeasance, on the other hand, is not a predicate for liability. Mere knowledge of the acts of another is insufficient to support liability." *Cook v. United Dairy Farmers, Inc*. (10th Dist. No. 02AP-781), 2003-Ohio-3118 at ¶25. *See also Kerlin v. Zahn* (6th Cir. 1985), 782 F.2d 1042, finding that "full knowledge" of a defamatory statement is insufficient evidence to support a judgment against an individual defendant in the absence of some positive conduct. In the absence of any allegations in the Amended Complaint regarding a positive act by Fr. Graham related to Xavier's Statement, Mr. Wells has not asserted a cause of action against Fr. Graham in his individual capacity.

The Amended Complaint completely fails to allege conduct by Fr. Graham to support any of the claims which Mr. Wells now claims are asserted against him. As stated by the Sixth Circuit, in the context of a motion to dismiss, "when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist." *Scheid v. Fanny Farmer Candy Shops, Inc*., 859 F.2d 434, 437 (6th Cir. 1988). Consistently and uniformly throughout the allegations (with the exception of the Tenth Claim for Relief only), Mr. Wells' Claims for Relief are asserted against Xavier and arise solely from conduct attributed to Xavier. The First Claim for Relief alleges that "Xavier breached its obligations…". (Amended Complaint at ¶90). There is no allegation that Fr. Graham had a contract with Mr. Wells, only

---

[7] This Reply addresses, *supra*, the lack of merit in the Third, Fourth, Fifth and Sixth Claims for Relief. Those arguments apply equally to Xavier and Fr. Graham; because Xavier's Statement is not false, it is necessarily not defamatory. Nevertheless, Mr. Wells' argument regarding the individual liability of Fr. Graham for this Statement – directly contrary to the plain allegations in his Amended Complaint – should be addressed.

that Xavier did. The Second Claim for Relief alleges that "Xavier acted in a shocking, outrageous, and extreme manner" and "Xavier's actions were a direct and proximate cause…" (*Id*. at ¶¶93, 95). Similarly, Mr. Wells' Third, Fourth, Fifth and Sixth Claims for Relief allege harm only from "Xavier's Statement". (*Id.* at ¶¶97-125). In direct contradiction to the allegations actually made in the Amended Complaint, Mr. Wells' Memorandum in Opposition attempts to characterize the statement as "Xavier's and Father Graham's Statement", (Memorandum in Opposition, pgs. 11-14), but such allegations are completely absent from the Amended Complaint. The Amended Complaint refers solely to "Xavier's Statement", and in fact, the Amended Complaint fails to allege that Fr. Graham even had "mere knowledge" of Xavier's Statement before it was published (something as noted above is not sufficient for personal liability). (Amended Complaint, ¶¶73, 74, 97-125). The Ninth Claim for Relief only includes allegations regarding Xavier's conduct: "Xavier has created an environment…". (*Id.* at ¶¶126-138). Finally, the Eleventh Claim for Relief asserts that "Xavier owed Wells a duty"; that "Xavier breached its duty"; and that Wells was harmed as a "direct and proximate result of Xavier's actions." (*Id*. at ¶¶145-147). There is no legal or factual allegation that Fr. Graham owed or breached a duty to Mr. Wells in the course of the UCB process. In fact, taking as true the facts alleged in the Amended Complaint, Fr. Graham acted in a manner not only authorized but endorsed by the U.S. Department of Education, Office of Civil Rights in its Dear Colleague Letter. (*See infra* pgs.12-13 and footnote 5).

Mr. Wells' Memorandum in Opposition relies heavily on factual assertions which appear nowhere in the Amended Complaint and are not supported by an accurate representation of the events surrounding the UCB hearing. For example, in arguing in favor of Fr. Graham's individual liability, Mr. Wells claims that "Father Graham was the driving force behind Wells'

17

unfair investigation, hearing, expulsion and the defamatory Statement." (Memorandum in Opposition, p.20). The Amended Complaint includes no allegations regarding Fr. Graham's involvement in the investigation, hearing, expulsion or the Statement. Instead, the Amended Complaint asserts only that Fr. Graham failed to defer to the advice of the Hamilton County Prosecutor. (Amended Complaint, ¶44). Similarly, Mr. Wells argues that Fr. Graham "actively encouraged the rush to judgment", that he "pressed for the hearing to commence – and end – as soon as possible", and he "assumed OCR only cared about protecting female complainants and not the accused… ignored Wells' rights and deprived him, a male student accused of sexual assault, of his right to a fair hearing." (Memorandum in Opposition, p.18). There is no factual support for these allegations. The Amended Complaint lacks any allegation of Fr. Graham's involvement in or influence over the timing of the hearing or the pace of the investigation. Again, the Amended Complaint does not – and cannot in good faith – allege that Fr. Graham had any more involvement in Mr. Wells' disciplinary hearing than failing to return a phone call to the Hamilton County Prosecutor, whose investigation is "not determinative of whether sexual harassment or violence" occurred for purposes of a university's disciplinary process. (Amended Complaint, ¶¶41-44; Dear Colleague Letter, p.10). Moreover, because this action is in accord with those procedures recommended in the guidance provided by the Dear Colleague letter, as a matter of law, those actions cannot at the same time form the basis for either a negligence or intentional infliction of emotional distress claim.

Despite the new arguments set forth in the Memorandum in Opposition, which stray from the actual allegations in the Amended Complaint with regard to the conduct of Fr. Graham, there is no factual support for any claim against him in his individual capacity. Mr. Wells does not allege that he had a contract with Fr. Graham. He does not allege conduct by Fr. Graham that –

as a matter of law – could rise to the level required to support a claim for intentional infliction of emotional distress. He does not allege that Fr. Graham was involved in – or even had knowledge of – Xavier's Statement. He does not allege that Fr. Graham owed him a special duty, nor does he allege conduct that – as a matter of law – could demonstrate a breach of any such duty. As such, Defendants respectfully request that this Court dismiss Fr. Graham as a defendant in this suit.

## III. CONCLUSION

Mr. Wells' Amended Complaint makes numerous allegations which Defendants emphatically dispute, and his Memorandum in Opposition to Defendants' Motion to Dismiss goes far beyond those allegations in an attempt to save six of his meritless claims. However, even accepting as true the allegations set forth in Mr. Wells' Amended Complaint, his Third, Fourth, Fifth, Sixth, Ninth and Tenth Claims for Relief fail to state a cause of action and must be dismissed. Moreover, Mr. Wells' Amended Complaint fails to state any cause of action against Fr. Graham individually, and he must be dismissed from this suit.

Respectfully submitted,

/s/ K. Roger Schoeni
K. Roger Schoeni (0004812)
Rebecca L. Cull (0083542)
Kohnen & Patton, LLP
201 East Fifth Street
PNC Center, Suite 800
Cincinnati, OH 45202
Phone: (513) 381-0656
Fax: (513) 381-5823
email: rschoeni@kplaw.com
rcull@kplaw.com
Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and accurate copy of the foregoing has been served electronically via the Court's ECF system this 6th day of November 2013 upon:

Peter R. Ginsberg, Esq.
Peter R. Ginsberg Law, LLC
12 East 49th St., 30th Floor
New York, NY 10017

Merlyn D. Shiverdecker
817 Main St., Suite 200
Cincinnati, OH 45202

Attorneys for Plaintiff

                                        /s/ K. Roger Schoeni
                                        K. Roger Schoeni